ORDER

DWIGHT W. BIRDWELL, Chief Justice.
The above-captioned cause involves many parties. Unless otherwise noted, and solely for purposes of simplicity, the parties will be referred to herein as follows.
• “Plaintiffs”: Brent Crawford, Leeann Dreadfulwater, Peggy Tiger, and Donnie Blair.
• “State Defendants” or “State”: Dianne Barker-Harrold, individually, and in her official capacity as District Attorney of Cherokee County.
• “City Defendants” or “City”: Norman Fisher', individually, and in his official capacity as Police Chief, City of Tah-lequah Police Department.
• “County Defendants” or “County”: Delena Goss, individually, and in her official capacity as Sheriff of Cherokee County; and the Board of County Commissioners of Cherokee County.
• “Federal Defendants” or “BIA”: Ada Deer, Under1 Secretary of Indian Affair's, United States Department of Interior; and Jim Fields, Muskogee Area Director of the Bureau of Indian Affairs.
• “Tribal Defendant” or “Byrd”: Joe Byrd, Principal Chief of the Cherokee Nation.
The above captioned cause also involves numerous, complex issues of law. Indeed, whether or' not this Court has jurisdiction to hear and resolve some of the issues is itself an issue raised by some defendants. Today’s Order addresses just a few of the pending issues, assesses liability against no one, and is by no means dispositive of this lawsuit[1].

The Order of January 27th, 1998

The lawsuit was original filed on September 3, 1997, and on the same day the then only Plaintiff, Brent Crawford, filed a Motion for Partial Summary Judgment. That Motion sought a ruling from the Court that the Cherokee Nation Court *3 house (being one and the same as the old Cherokee Nation Capitol Building, erected in the nineteenth century) located in downtown Tahlequah, Oklahoma, is “Indian Country” as that term of legal art was defined and known at the time.
All but two of the defendant groups substantively responded to the Motion for Partial Summary Judgment.[2] The response briefs filed by City, County and State to the Motion for Partial Summary Judgment, collectively, were well-written, extensive, and thorough. Those briefs represented a tremendous amount of scholarly, lawyer-like (in the best sense of the term) work. In short, the lawyers representing City, County and State did (and appear' to be continuing to do) a fine job for their respective clients.
On January 2nd, 1998, the Court entered an Order which stated, in part, ... a decision will be rendered, within ten (10) days on plaintiffs Motion for Summary Judgment. All pa rties are directed to file any additional material they wish no later than January 7, 1998, by 1: 00 p.m.
On January 27, 1998, the Court entered an Order granting Crawford’s Motion for Partial Summary Judgment insofar, and only insofar, as the Court found the legal status of the Cherokee Nation Courthouse, and the grounds on which it sits, to be Indian Country. The Order made no assessment of liability as to any party.
On February 19, 1998, the City filed a Motion to Reconsider citing two grounds. First, the City contends that the Court failed to follow Rule 18[3] by not conducting a hearing prior to issuing the Order granting partial summary judgment on the question of the legal status of the Courthouse. Second, the City claims the entering of the Order was premature as there was no justiciable issue before the Court because the Court had not determined whether it had personal jurisdiction overall of the multiple defendants.[4]
The second issue raised by City (“personal jurisdiction”) will be dealt with first. Contrary to the City’s assertion, not all of the Defendants had filed a motion to dismiss based upon lack of personal jurisdiction at the time the January 27, 1998, Order was entered.[5] Moreover, Norman Fisher (“City”) was sued both individually and in his official capacity. City has never denied that the Court has jurisdiction over *4 Norman Fisher, individually.[6] Indeed, at a hearing on the Motion for Reconsideration, and all other then pending Motions, on June 20, 1998, the lawyer for City stated, And although there have been allegations in some of the briefs that he is a racist, Norman Fisher is a member of this particular Tribe, and we therefore are not saving that in his individual, capacity there is not jurisdiction.[7] [emphasis added]. The lack of merit in the second stated ground (i.e. lack of personal jurisdiction) in the City’s Motion to Reconsider is clear from the mouth of the City’s own lawyer.
In its brief in support of its Motion to Reconsider, City states that, It is well settled federal law that before a, court can rule on the merits of a controversy, it must first determine whether it has personal jurisdiction over the various defendants. The City cites three federal cases in support of the statement.[8] The cases cited by City concern the long-arm statute of the State of Utah, and are inapposite to the present lawsuit.[9]
Also in its brief, the City makes the following bold statement, Federal law is very clear that the court is not allowed, to make a decision such, as this on the merits of the plaintiffs claims until it has fully and finally determined that it does have personal jurisdiction over all of the defendants. [emphasis added]. What is very clear to the Court is that the City cites no authority in support of the statement. Perhaps that is because no federal legal authority exists to support the statement. It is also very clear that, in granting the partial summary judgment, the Court did not rule on the ultimate merits of Plaintiffs claim, and, therefore, whether authority exists for City’s statement is immaterial.
The City’s request for reconsideration, based upon the “lack of personal jurisdiction” allegation, is DENIED, for the present time.
HOWEVER, THE ADMISSION, BY HIS LAWYER, OF PERSONAL JURISDICTION OVER NORMAN FISHER, *5 INDIVIDUALLY, IS NOT, AND SHOULD NOT BE CONSTRUED AS, A FINDING OF LIABILITY, NOR AN INDICATION THAT THERE IS, OR THERE IS NOT, ANY LIABILITY AS TO HIM, INDIVIDUALLY. THE QUESTION OF LIABILITY IS PREMATURE.
Among numerous matters the Court still has under consideration, is the argument made by City’s lawyer that suit against Norman Fisher in his official capacity is, in fact, a suit against the City of Tahlequah, Oklahoma, and the Court has no jurisdiction over the City of Tahlequah. This same argument regarding jurisdiction over other governmental bodies has also been raised by County and State.
THE ADMISSION OF PERSONAL JURISDICTION OVER NORMAN FISHER, INDIVIDUALLY, IS NOT, AND IS NOT TO BE CONSTRUED TO BE, A FINDING THAT THE COURT HAS PERSONAL JURISDICTION OVER NORMAN FISHER IN HIS OFFICIAL CAPACITY; THAT IS A MA TIER WHICH IS STILL UNDER CONSIDERATION BY THE COURT, AS ARE SIMILAR MOTIONS REGARDING COUNTY AND STATE.
The first objection in City’s Motion for Reconsideration concerns the Court not holding a hearing on the Motion for Partial Summary Judgment prior to the entering of the Order granting it. The Plaintiffs responded to the City’s Motion by stating, in part, Con trary to the assert ion, of Defendant Norman Fisher and the clear language of Rule 18, it does not, mandate a hearing on Motions for Summary Judgment The purpose of Rule 18 is to rule on “prehearing motions” after the opening of the hearing. This Rule addresses the issue where a hearing is scheduled, such as an employment termination hearing, that all prehearing motions, such as motions in limine, are decided, after the opening of the hearing and, prior to the, conduct of the hearing.[10]
The Plaintiffs’ statement regarding Rule 18 is fundamentally correct. There is no Cherokee rule requiring the Court to hold a hearing on a Motion for Summary Judgment prior to the Court ruling on the Motion.[11]
As earlier noted, the original Plaintiff filed the Motion for Partial Summary Judgment concurrently with the complaint, on September 3, 1997. City, County, and State replied with substantive responses. The BIA sent a “courtesy” letter dated October 17, 1997. Byrd did nothing. On January 2nd, 1998, the Court entered an Order which stated, in part, ... a decision will he rendered within ten (10) days on plaintiffs Motion for Summary Judgment. AI/ parties are directed, to file any addi- *6 tioual material they wish no later than January 7, 1998, by 1:00 p. m,
Notwithstanding the January 2nd Order, none of the Defendants filed any additional materials, nor did they express any desire that they intended to do so. None of the Defendants had given notice that they wished to present witnesses for examination prior to January 2nd, 1998, and none gave such notice after said date.
With what the parties had submitted to the Court, it was clear that there was no genuine issue as to any material fact[12] regarding the legal status of the Cherokee Nation Courthouse, as of January 27, 1998. The disagreement between the parties pertaining to the legal status of the Cherokee Courthouse solely involves a question of law, and the proper application of the law to the undisputed facts.
Crawford, City, County and State had submitted thorough, well-written briefs, and other materials, setting forth their respective positions and arguments. The Court read the materials submitted by the parties, and understood them. There was no need for oral argument as there was no need for clarification of what the parties had presented to the Court. In short, there was no need for the Court to hold a hearing.
Accordingly, on January 27, 1998, the Court entered its Order granting partial summary judgment, solely on the issue of the legal status of the Cherokee Nation Courthouse. The Order was clear that the other issues raised by City, County and State in their respective motions to dismiss, would be addressed at a later date.
As part of its Motion to Reconsider, City requested a hearing, and the Court did hold a hearing on June 20, 1998. At that hearing, neither City, County, nor State presented any witnesses. At that healing, neither City, County nor State presented any law, nor citation to law, that existed prior to January 27, 1998, that they had not presented prior to the Order in the materials they submitted. In short, neither City, County, nor State presented anything new on June 20th 1998, which had existed prior to January 27, 1998, and which they had not already presented to the Court prior to January 27, 1998. As to matters which existed prior to the date of the Order, the oral arguments of the lawyers for City, County, and State were nothing more than a summarized rehash of what had been submitted in writing prior to the Order.
Accordingly, to the extent the motions to reconsider are based upon the status of the law as it existed as of the date of the Order, the motions to reconsider are DENIED, and to that extent, the Order is AFFIRMED.
While the hearing on June 20th, 1998, did not shine any new light on the law as it existed as of the date of the Order, two new matters were raised at the hearing which must be addressed. The first concerns two decisions rendered by the United States Supreme Court subsequent to the Court’s January 27, 1998, Order.[13] The second matter concerns the existence of the pending “federal cases” which appear to be remarkably similar in many respects to the lawsuit before this Court, and which were filed in federal court prior to the filing of this lawsuit. These cases *7 were filed by the same lawyer who filed the present case.[14]
With the United States Supreme Court’s decisions in Venetie and Leech Lake, the Defendants have supplemented their reconsideration requests. The Court finds that further study and analysis of the impact, if any, of Venetie and Leech Lake upon the January 27, Order is warranted. The Court further finds that inasmuch as its January 27th Order is interlocutory in nature and not dispositive of the lawsuit, and as it imposes no liability upon any of the parties, that it is not necessary to withdraw the Order pending the Court’s consideration of the impact, if any, of Ven-etie and Leech Lake. Therefore, the Order remains intact pending the Court’s consideration of the Defendants’ supplemented motions to reconsider.
The Court also finds that further consideration of what action it should take in view of the pending “federal cases” is prudent, given that those lawsuits appear to be in the nature of “companion” cases to this lawsuit, they were filed prior to the filing of this lawsuit, and they are in federal court. Regarding the “federal cases”, if any of the parties wish to supplement anything they have previously submitted to this Court, they are welcome to do so. The parties are directed to advise the Court of any decisions made, or orders entered, in the “federal cases”, interlocutory or final, which may be relevant to issues in this lawsuit as and when they are made/entered.

Recusal Motion

Immediately prior to the June 20th hearing, described above, an in camera hearing was held on a motion brought by City, County, and State for recusal of the entire Judicial Appeals Tribunal in regards to this lawsuit.[15] The details of the request need not be repeated in view of some simple facts.
The Judicial Appeals Tribunal was established pursuant to Article VII of the Cherokee Constitution. THERE IS NO AUTHORITY IN THE CHEROKEE CONSTITUTION FOR THE ESTABLISHMENT OF A DISTRICT COURT OR ANY OTHER COURT, OTHER THAN THE JUDICIAL APPEALS TRIBUNAL. The status and jurisdiction of the courts of the Cherokee Nation has been discussed many times before and will not be repeated here, again.[16] Suffice to say that the Tribunal is the only constitutionally-based Cherokee court, and The decision of the Judicial Appeals Tribunal shall be final insofar as the judicial process of the Cherokee Nation is concerned.[17]
All of the parties to the lawsuit will be treated fairly, and the Court can and will render unbiased rulings. However, to save time and effort for all concerned, the Court is not going to attempt to convince anyone why this is so. The reason is simple. The Court recognizes that inasmuch as City, County and State have requested recusal of the entire Tribunal, little can be done to satisfy them other than *8 recusal. In any event, given the structure of the Cherokee courts, the recusal motion must be denied based upon the rule of necessity. The majority view [of courts in America [18]] is that the rule of disqualification of judges must yield to the demands of Simply stated, the rule of necessity means that a judge is not disqualified to sit in a case if there is no other judge available to hear and decide the case.[19]
Actual disqualification of a member of a, court of last resort [such as this Court] will not excuse the member from performing Ids official duty if the failure to do so would result in a denial of a litigant’s constitutional right to have a question, properly presented to the court, adjudicated. In other words, when all judges would be disqualified, none are disqualified, and disqualification will not be permitted to destroy the only tribunal with power in the premises. The doctrine operates on the principle that a biased judge is better than no judge at all. Under such circumstance, it is the duty of the disqualified judge to hear and decide the controversy, however disagreeable it may be.[20] [Emphasis added].
In this lawsuit, if the Judicial Appeals Tribunal were to recuse itself, then Plaintiffs would be denied their Cherokee constitutional right to have their case adjudicated. The Plaintiffs may ultimately win, or they may ultimately lose, as against some or all of the Defendants, but, regardless of whatever the final outcome may be, the Plaintiffs have a fundamental, constitutional right to have “their day in court”, and the Tribunal cannot, and will not, allow that right to be destroyed. Foithe reasons stated herein, the joint Motion to Recuse is hereby DENIED.

. To that extent this Order is similar to those previously entered by the Court in this lawsuit.

. The Federal Defendants sent a “courtesy” letter to the Court, dated October 17, 1997. In essence, the letter stated that any action, or attempt at action, taken against the Federal Defendants would be of no force or effect, and meaningless. Byrd ignored the lawsuit until April 7th, 1998. The then-only Plaintiff, Brent Crawford, had earlier filed a Motion for Default Judgment against Byrd. However, the original petition was subsequently amended by naming additional plaintiffs, and Byrd has participated in the lawsuit subsequent thereto.

. 20 CNCA App. Rule 18. The Chief Justice, or as otherwise provided in Rules 3 and 3a, shall rule on all prehearing motions (except as provided in Rules 9, J 5, and 22), and all such rulings and orders shall be issued in writing and a copy served on each of the parties. The Justice designated to conduct the hearing shall rule on all motions after the opening of the hearing, and any orders in connection therewith, if announced at the hearing, shall be stated orally on the record; in all other cases, the Justice shall issue such rulings and orders in writing and shall cause a copy of the same to be served on each of the parties, or shall rule on the matter in the decision.

. It should be remembered that the January 27, 1998, Order granting Partial Summary Judgment concerned only a single issue, the legal status of the Cherokee Nation Courthouse. The Order did not adjudicate the question of liability, if any, of any of the Defendants.

. The BIA and Byrd had filed nothing.

. As earlier noted, State Defendant, Dianne Barker-Harrold, has been sued, individually, and in her official capacity as District Attorney for Cherokee County. The sole ground stated in Stale’s Motion to Dismiss concerns the issue of whether or not the Courthouse is Indian Country. In its brief, the State did not address the issue of the Court’s personal jurisdiction over Dianne Barker-Harrold, individually. IN FACT, DIANNE BARKER-HAR-ROLD IS A MEMBER OF THE CHEROKEE NATION. MOREOVER, SHE IS A FORMER ASSOCIATE DISTRICT JUDGE OF THE CHEROKEE NATION. Drew Wilcoxen v. Joe Byrd, Case No. JA T 9816.

. Transcript of hearing, June 22, 1998, page 8, lines 5-9.

. National Petroleum Marketing v. Phoenix Fuel Company, Inc., 902 F.Supp. 1459, 1462 (D.Utah 1995), Far West Capital, Inc. v. Towne, 828 F.Supp. 909, 911 n. 3 (D.Utah 1993), affirmed in 46 F.3d 1071 (10th Cir. 1995).

.If City is urging an extension of the federal courts' pronouncements to this lawsuit, the City’s argument fails to give the City the result the City desires. In both National Petroleum, at 1461, and Far West Capital, 46 F.3d 1071, 1075, the federal courts state the following: The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Pri- or to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The Tenth Circuit continues with, We resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing that establishes jurisdiction, [citations omitted]. Therefore, it would appear that the Court has personal jurisdiction over Norman Fisher, individually, Dianne Barker-Harrold, individually, and Joe Byrd.

. Plaintiff’s Objection and Response to Defendant Norman Fisher’s Motion to Reconsider, filed February 25, 1998, page 5.

. Such procedure does not infringe upon any constitutional right, Cherokee or federal. The Court takes notice that the practice followed by the federal courts in Oklahoma, and also the Oklahoma state courts, is no different than that which was used by this Court. V.S.D.C., E.D. Okla Local Rule 56.1 Pursuant to Rule 78, federal Rules of Civil Procedure, hearings with oral argument on motions for summary judgment will not be conducted as a matter of course, unless otherwise ordered by the Court. U.S.D.C., N.D. Okl. Local Rule 78.1 Motions will be considered by the court without oral hearing, unless otherwise ordered by the court. U.S.D.C., W.O. Okl. Local Rule 78.1 Oral arguments or motions, applications or objections will not be conducted unless ordered by the Court. Oklahoma Rules for District Courts, Rule 13(f), last sentence, A court may decide a motion for summary judgment without a hearing, and where this is done, the court shall notify the parties of its ruling by mail.

. 20 CNCA App. Rule 21. Motion for Summary Judgment.

. Alaska v. Native Village of Venetie Tribal Government, 522 U.S. 520, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998) [“Venetie”], and Cass County, Minnesota v. Leech Lake Band of Chippewa Indians, 524 U.S. 103, 118 S.Ct. 1904, 141 L.Ed.2d 90 (1998) [“Leech Lake”]

. Linda Turnbull-Lewis, et al. V. Dianne Barker-Harrold, el al. Case No. CIV-97-689B, consolidated with Chadwick Smith v. Dianne Barker-Harrold, et al. Case No. CIV-97-690-B, V.S.D.C., E.D. Okl.

. The Court appreciates the professional manner in which Mr. Anthony conducted himself in presenting the group's motion.

. By way of example, an extensive discussion of Cherokee courts can be found in Mayes v. Thompson, JAT 95-15, and Phillips v. Eagle JAT 98-09.

. Cherokee Const, art. VII.

. Including the Tribunal. Wilcoxen v. Byrd, JAT 98-16. necessity.

. 46 Am Jur 2d, Judges § 92. [citations omitted].

. 46 Am Jur 2d, Judges § 92. [citations omitted].